El Pueblo, Demandante y Apelado, *v.* Ruiz, Acusado y Apelante.

Apelación procedente. de la Corte de Distrito de Aguadilla en causa por delito de infracción de la ley proveyendo para la organización de la junta de médicos examinadores.

No. 1132.—Resuelto en julio 17, 1917.

Infracción Ley Junta Médicos Examinadores—Junta de Médicos Examinadores—Prescripción de Drogas o Medicinas.—Para que se entienda cometido el delito prescrito y castigado en la sección 7 de la ley proveyendo para la organización de una Junta de Médicos Examinadores, de 1903, tal como quedó enmendada en 1915 por la ley No. 6, no es necesario en todos los casos que su autor haya agregado a su nombre las letras M. D. (Doctor en Medicina).

Id.—Id.—Intención.—No basta que una persona haya prescrito a otra el uso de determinadas drogas, sino que es necesario que lo haya hecho ''a sabiendas y con intención de usurpar las funciones de los médicos autorizados,'' para que pueda ser declarada culpable del delito a que se refiere la ley antes citada.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Luis Montalvo Guenard* y *Manuel Rodríguez Serra.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

El Juez Asociado ·Sr. del Toro, emitió la opinión del tribunal.

La denuncia en lo pertinente dice así:

''Yo, Pablo Rodríguez, * * *, formulo denuncia contra Carlos Ruiz, por delito 'Ley proveyendo para la organización de una Junta de Médicos Examinadores,' cometido de la manera siguiente: Que en 3 de septiembre de 1916, y en Aguada, P. R., del Distrito Judicial Municipal de Aguadilla, P. R., el referido acusado a sabiendas y con intención de usurpar las funciones de los médicos autorizados, prescribió, formuló u ordenó para mi uso medicinas consistentes en unas papeletas para la cura de unas calenturas que sentía y un líquido para curar, aliviar o mitigar un dolor en el brazo derecho, pagándole por todo la suma de cincuenta centavos.''

El acusado alegó que los hechos consignados en la denuncia no constituían delito público. Se basó en que, según la ley, para que se entendiera cometido el delito, no era suficiente que se prescribiera una fórmula, sino que era necesario que

esa prescripción la hiciera una persona que hubiera añadido a sus nombres las letras D. M. y que públicamente se anunciara como médico o cirujano.

La ley vigente sobre la materia es la sección 7 de la ley proveyendo para la organización de una junta de médicos examinadores, de 1903, tal como quedó enmendada en 1915, (Véase la ley No. 6 de 1915). Dice así:

"Sección 7.—Toda persona que ejerciere la medicina o cirugía o cualesquiera otros ramos de éstas, o la obstetricia en la isla, contrariamente a las disposiciones de esta Ley, por cada infracción de las mismas incurrirá en *misdemeanor* y convicta que fuere de ello, será castigada con una multa que no excederá de quinientos dólares ni bajará de cincuenta dólares o prisión en la cárcel por un término de treinta a noventa días o ambas penas a discreción del tribunal. Para los efectos de esta Ley se considerará que ejerce la profesión toda persona que a sus nombres añadiere las letras D. M. (Doctor en Medicina), que públicamente se anunciare como médico o cirujano y que a sabiendas y con intención de usurpar las funciones de los médicos autorizados, prescribiere, formulare u ordenare, para el uso de cualquier persona, alguna droga, medicina, agua, menjurje, brebaje, mecanismo, aparato u otro medio fuere o nó material, para la cura, alivio o mitigación de cualquiera dolencia o enfermedad moral o física o para la cura o alivio de cualquiera herida, fractura o daño corporal u otra enfermedad, o que directa o indirectamente reciba remuneración por tales servicios."

Si se examina el estatuto en inglés se verá que en vez de decir: "Para los efectos de esta Ley se considerará que ejerce la profesión toda persona que a sus nombres añadiere las letras D. M. (Doctor en Medicina), que públicamente se anunciare como médico o cirujano *y que* a sabiendas  *  *  *," expresa: "*Any person shall be regarded as practicing within the meaning of this Act who shall append the letters M. D. (Medical Doctor) to his or her name, who shall profess publicly to be a physician or surgeon, or who knowingly  *  *  *.*"

El original castellano de la sección siete antes de ser enmendado en vez de la *y* usaba la *o*, y si se estudia, como lo haremos en adelante, en qué consistió la enmienda, y se pene-

tra en el pensamiento de la totalidad de la sección, se concluirá sin esfuerzo alguno que la versión inglesa es la correcta y que por tanto una persona que a sabiendas y con intención de usurpar las funciones de los médicos autorizados, prescribiere para uso de cualquiera otra persona alguna medicina, etc., comete el delito aunque no haya añadido a su nombre las letras M. D., ni se haya anunciado públicamente como médico o cirujano.

Declarada sin lugar la excepción, se celebró la vista y el acusado fué finalmente condenado a sesenta pesos de multa y a sesenta días de cárcel. No conforme con la sentencia, interpuso el presente recurso de apelación.

En el acto de la vista, el Fiscal presentó la siguiente prueba:

"*Pablo Rodríguez*, al Fiscal: 'Me llamo Pablo Rodríguez, vivía en Rincón en septiembre de 1916, y vine a Aguada a que me vieran un brazo que tenía malo; el día 3 de septiembre por la mañana mandé a Román Pérez y me trajo una cataplasma de semilla de lino; por la tarde mandé a Juan Rosado y me trajo una cajita de papeletas para tomar cada media hora y un frasquito chiquito con un líquido, cuyas medicinas principié a tomar y las dejé; mandé a Rosado que fuera donde Carlos Ruiz; no estuve a ver a Carlos Ruiz; tomé las medicinas para las calenturas y pagué 50 centavos por ellas que mandé anotar a la cuenta mía del mismo Carlos Ruiz, y después yo mismo se los pagué a él.'

"Al defensor: 'Juan Rosado me trajo una cajita de papeletas y un líquido en un frasquito; él mismo me trajo ambos medicamentos, estoy seguro, por la tarde; por la mañana mandé a Román Pérez y me trajo un paquete de semilla de lino; yo no le ví la cara a Carlos Ruiz porque me encontraba grave.'

"Al Fiscal: 'Pagué cincuenta centavos a Carlos Ruiz y le dije de qué era lo que le pagaba; yo le debía otros centavos más y le pagué 50 centavos por las dos medicinas a Carlos Ruiz; eran setenta y dos centavos con la cataplasma, y le quedé a deber 22 centavos; Román Pérez me llevó una cataplasma el 3 de septiembre por la mañana.'

"Al defensor: 'Carlos Ruiz recibió el dinero personalmente, y no le pagué nada por recetarme.'

"*Juan Rosado*, al Fiscal: 'Me llamo Juan Rosado, vivo en el

barrio de Río Grande, de Rincón; conozco a Carlos Ruiz y a Pablo Rodríguez; le dije cómo se encontraba Pablo Rodríguez y me dió una cajita de papeletas para tomar cada media hora y un líquido, y le mandó decir conmigo que el líquido era para friccionarse el brazo y las papeletas para las calenturas hasta refrescar; le pregunté cuanto costaba y me dijo que 50 centavos y yo le dije que se lo apuntura a Rodríguez, por dos ocasiones; esta misma cajita que me muestra fué la que llevé a Rodríguez.'

"Al defensor: 'Ese día fué el 3 de septiembre, a las tres y media de la tarde o cuatro; yo no ordené que anotara algo a la cuenta de Pablo Rodríguez por recetarle porque él no quitaba nada por la receta; yo fuí solo.'

"Al Fiscal: 'Yo le comuniqué cómo estaba Pablo Rodríguez y entonces me recetó eso y lo despachó.'

"*Eulalia Avilés,* al Fiscal: 'Me llamo Eulalia Avilés, vivo en Rincón y soy la señora de Pablo Rodríguez; lo único que sé es que mi marido cayó enfermo el día primero de julio y el día 2 mandó sacar la primera receta con Juan de Dios, y la otra la mandó sacar con Juan Rosado, y la otra la mandó sacar con Jesús Rosado a donde Carlos Ruiz, y la otra con Román Pérez a donde Carlos Ruiz; mi marido ha tomado algunas papeletas; conozco esas medicinas y ese frasquito que me muestra.' "

El Fiscal ofreció además como prueba el frasquito y las papeletas a que se referían los testigos.

Esa fué la prueba de cargo practicada. El apelante sostiene que no es bastante para demostrar que actuó a sabiendas y con intención de usurpar las funciones de los médicos autorizados, como exige la ley.

La sección 7 en su forma original consignaba como delito el mero hecho de prescribir, etc. La enmienda de 1915 agregó las palabras "a sabiendas y con intención de usurpar las funciones de los médicos autorizados." Ese fué sin duda el principal motivo de la enmienda y siendo ello así quedó perfectamente claro el propósito del legislador. Este tuvo en cuenta que podrían existir casos en que el simple hecho de prescribir una fórmula, no debiera ser considerado como delictivo, y exigió que la prescripción se hiciera a sabiendas y con la intención de usurpar las funciones de los médicos autorizados.

¿Demuestra la prueba practicada que el acusado actuó con

la intención de usurpar las funciones de los médicos autorizados? Dudamos de ello. Se trataba de un farmacéutico. No consta que se cobrara nada por la llamada receta. Sólo se cargó el valor corriente de las medicinas despachadas. Más parece la actuación del acusado la de una ayuda corriente y natural en tales casos, que seguramente se repite a diario en Puerto Rico muchas veces, que la invasión deliberada de las atribuciones de los médicos. Las drogas indicadas y vendidas eran simples: semillas de lino para una cataplasma, papeletas de quinino para cortar la fiebre.

Dada la historia del estatuto, la prueba de la intención del acusado en un caso de esta naturaleza debe ser algo más que la mera realización de un hecho aislado, a menos que ese hecho sea tan completo en sí que cumpla con todas las exigencias de la ley.

Por virtud de todo lo expuesto, en ausencia de una demostración cumplida de la intención exigida por la ley, opinamos que debe revocarse la sentencia apelada y absolverse al acusado.

> *Revocada la sentencia apelada y absuelto el acusado.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey y Hutchison.

El Juez Presidente Sr. Hernández no intervino en la resolución de este caso.